**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | |
|---|---|
| PRESTON SIMS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:04-646-MBS-BM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| THE UNIVERSITY OF SOUTH ) | |
| CAROLINA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This action was filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., alleging employment discrimination. The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 30, 2005. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on October 25, 2005, following which Defendant filed a reply memorandum on November 4, 2005. Defendant's motion is now before the Court for disposition.[1]

**Background and Evidence**[2]

Plaintiff is an African-American who worked for the Defendant from 1962 until his

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



1

retirement in 2004.  Plaintiff's Deposition, p. 9.  Plaintiff was Supervisor in the Heating and Air Conditioning (HVAC) Department from 1987 to 1997, served as the Area Supervisor over the HVAC, Plumbing, and Lighting Departments from 1997 to 2003, and was a supervisor over the entire Energy Services Department from 2003 until his retirement in 2004.  Plaintiff's Deposition, pp. 10-12.  Plaintiff alleges that he was denied promotions to positions that were instead awarded to white employees in 1988, 1994, and 1997, and that he was denied a requested raise in 1990.[3]  Plaintiff's Deposition, pp. 14-21; see also Plaintiff's Supplemental Answers to Defendant's Interrogatories.  Plaintiff also alleges that his white supervisor, Gerald Goings, failed to grant him a performance longevity pay increase since 1984.  Plaintiff's Supplemental Answers to Defendant's Interrogatories.

On or about October 5, 1999, Plaintiff as well as some other maintenance employees of the Defendant filed a joint administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  Plaintiff's Deposition, p. 7; Defendant's Exhibit 1.  The EEOC reviewed these complaints, which alleged discrimination between August 19, 1997 and October 1, 1999, for each individual listed on the administrative charge.  Id.  After Plaintiff's receipt of a right to sue letter on May 21, 2001; see Plaintiff's Deposition, pp. 8-9; Defendant's Exhibit 2; this action was filed in the United States District Court asserting claims for disparate treatment race

---

[3]With respect to the 1994 position that was awarded to white employee Neal Clark, in his supplemental responses to Defendant's interrogatories Plaintiff identifies this event as happening "around 2000".  However, Plaintiff testified at his subsequent deposition that the promotion at issue happened in 1994.  Plaintiff's Deposition, pp. 20-21.  With respect to the position that was awarded to white employee Kenny Long in 1997, in his supplemental responses Plaintiff indicates that this occurred in 1998.  However, it is clear from a review of Plaintiff's deposition testimony that that event occurred in 1997.  Plaintiff's Deposition, pp. 14-15.

2



discrimination.[4]

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

**I.**

**(Time Barred Claims)**

Defendant first argues in its motion for summary judgment that Plaintiff's promotion claims from 1988, 1994 and 1997, as well as his claim that he was denied a raise in 1990, should be dismissed because they are time barred. After careful consideration of the arguments and exhibits presented, the undersigned is constrained to agree. Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e).

---

[4]Plaintiff initially filed a joint lawsuit together with the other maintenance employees. That initial action was subsequently withdrawn so that each Plaintiff could separately pursue their own individual claims in this Court.



Here, it is undisputed that South Carolina is a deferral state, and that the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of initiating state proceedings. The record reflects that Plaintiff's administrative charge was forwarded to SCHAC by the EEOC on or about October 16, 1999, although it was investigated by the EEOC pursuant to a "work sharing agreement." Plaintiff's Deposition, Defendant's Exhibit 1. Therefore, Plaintiff had three hundred (300) days to file his administrative charge following a discriminatory act, and a failure by the Plaintiff to do so bars him from pursuing a Title VII lawsuit in this Court with respect to any alleged discriminatory act which falls outside of this three hundred (300) day period. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 242 (4th Cir. 1967); see National RR Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).[5]

Based on Plaintiff's administrative charge filing date of October 5, 1999, any separate and distinct discrimination claims occurring prior to December 9, 1998 would not be actionable. Williams, 370 F.3d at 429; Morgan, 536 U.S. at 114. The cited promotion claims are

---

[5]A claimant may in some circumstances include claims beyond this three hundred (300) day period where the Defendant's conduct is deemed to be a "continuing violation." However, under the applicable caselaw, separate and distinct acts are not considered as part of a "continuing violation" together with any prior (and untimely) allegedly discriminatory decisions which involved the same claimant. See Morgan, 536 U.S. at 117 [finding that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'," and prior discrete discriminatory acts which are not filed within the 300 day time limit "are untimely filed and no longer actionable."]; Williams v. Giant Food, Inc., 370 F.3d 423, 429 (4th Cir. 2004) [continuing violation doctrine does not apply to a failure to promote claim, as a promotion decision is a discreet act of discrimination]; cf. Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998) [distinguishing applicability of the continuing violation theory to hostile work environment claims, for which it may be used, from other types of claims, such as failure to promote].



clearly separate and distinct claims under the applicable caselaw, and since all substantially predate 1998, they are well outside the applicable three hundred (300) day claim period. With respect to Plaintiff's claim that he was unlawfully denied a raise in 1990, although salary discrimination can be considered a continuing violation in some cases; Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 345-348 (4th Cir. 1994); that would not be the case here since Plaintiff had knowledge of the alleged discriminatory act well before the 300 day deadline. Plaintiff's Deposition, 17. See Becker v. Gannett Satellite Information Network, Inc., 10 Fed. Appx. 135, 139-140 (4th Cir. 2001); Morgan, 536 U.S. at 114 [holding that "salary discrimination" can be a discrete act]; Miller v. American Family Mutual Ins. Co., 203 F.3d 997, 1004 (7th Cir. 2000) [even though alleged discriminatory pay practice continued into limitations period, plaintiff was aware of alleged pay inequality well before then and therefore could not rely on the continuing violation theory]. See also Dasgupta v. University of Wisconsin Bd. of Regents, 121 F.3d 1138, 1140 (7th Cir. 1997).

Therefore, as these claims fall outside of the applicable three hundred (300) day claim period, they may not ordinarily be considered by this Court. While Plaintiff advances two arguments as to why these claims should be considered notwithstanding the three hundred (300) day time bar; hostile work environment and equitable estoppel; for the reasons set forth hereinbelow, the undersigned does not find that either of these arguments has any merit.[6]

---

[6]Plaintiff also refers in his memorandum to claims of other individuals who worked for the Defendant. However, the previous multi-Plaintiff case was dismissed specifically so that each Plaintiff could pursue their own, *individual*, claim against this Defendant. Neither this action, or even the prior multi-Plaintiff action, is or ever was a class action. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004) ["[A]n individual plaintiff in a private, non-class action alleging employment discrimination is not litigating common questions of fact, but the discrete question of whether the employer discriminated against the plaintiff in a specific instance."], (quoting Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998)).

5



First, Plaintiff has not set forth a claim of hostile work environment in this case. Pursuant to this Court's order of February 15, 2005, Plaintiff was required to specifically identify the claim or claims he was asserting in this lawsuit. In his supplemental responses to Defendant's interrogatories submitted after the Court's order, Plaintiff discusses his claims of pay disparity and denial of promotions, but does not assert a hostile work environment claim. In his subsequent deposition Plaintiff testified that he was denied promotions and alleged incidents of pay disparity. While Plaintiff does also discuss his disagreements with Goings in the 1990s and how he believes Goings exhibited racist attitudes, which could lend support to his disparate treatment claims, he does not assert a hostile work environment claim in his deposition. see Plaintiff's Deposition, pp. 24-27. Plaintiff also does not set forth a hostile work environment claim in the general and conclusory allegations of his Complaint. Plaintiff cannot now change his theory of recovery, nor is the Defendant required to defend a claim which essentially becomes a "moving target" depending on the facts and arguments presented.

In any event, even if Plaintiff had asserted a hostile work environment claim in this case, "[i]ncidents outside of the statutory window are [nevertheless] time-barred unless they can be related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation". Beall v. Abbott Laboratories, 130 F.3d 614, 620 (4th Cir. 1997), (citing Jenkins v. Home Ins. Co., 635 F.2d 310, 312 (4th Cir. 1980)); Morgan, 536 U.S. at 105 ["[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile work environment takes place within the statutory time period."]; Huckabay, 142 F.3d at 239. Plaintiff has identified no specific act contributing to any hostile work environment that took place

6



within the statutory time period. Even if Plaintiff's testimony about Goings was considered as a hostile work environment claim, a review of Plaintiff's deposition testimony shows that the statements or other cited conduct of Goings referenced by the Plaintiff occurred years before Plaintiff's filing of an administrative claim with the EEOC. Plaintiff's Deposition, pp. 17, 24-27. Therefore, Plaintiff's hostile work environment argument is without merit.

As for equitable estoppel, Plaintiff's entire argument with respect to this theory is set forth in his brief as follows:

> Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling.

Plaintiff's Brief, p. 7.

While setting forth this standard, however, Plaintiff has offered no evidence whatsoever to show why he is entitled to equitable relief in this case. Plaintiff's counsel does further state in his brief that the Defendant "let...Plaintiff and other similarly situated go through a seemingly endless labyrinth of complaints with no meaningful response", which Plaintiff argues entitles him to equitable relief. See Plaintiff's Brief, pp. 8-9. However, Plaintiff has pointed to no exhibits or evidence to support this general and conclusory statement, and the Court cannot allow Plaintiff's Title VII claim to proceed based on such an unsubstantiated argument. See Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment]; Gans v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; cf Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence].



> "Equitable relief is reserved for only the most deserving complainants," usually where there exists affirmative misconduct. Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992), vacated on other grounds, 113 S.Ct. 1940 (1993)
>
>> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.
>
> Polsby, 970 F.2d at 1363, (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Here, as noted, Plaintiff has presented no evidence to show that he is entitled to equitable estoppel in this case. Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir. 2002) ["The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case."]; see also Madison v. St. Joseph Hospital, 949 F.Supp. 953, 960 (D.N.H. 1996).

In reaching the conclusion set forth herein, the undersigned is not signaling a lack of concern over Plaintiff's claims. However, the Fourth Circuit has strictly construed the statutory filing requirements for Title VII cases, holding that "[p]rocedural requirements…for gaining access to the…courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Polsby, 970 F.2d at 1364, vacated on other grounds, 113 S.Ct. 1940 (1993), (quoting Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984)); see Poteat v. Mack Trucks Inc., No. 96-1437, 1997 WL 33117, **4 (4th Cir. January 28, 1997); Chappell v. Emco Machine Works Co., 601 F.2d 1295, 1303 (5th Cir. 1979). Therefore, since Plaintiff failed to file his administrative charge within three hundred (300) days of the discrimination claims at issue, and in light of the applicable caselaw and statutory requirements, the undersigned has no choice but

8



to find that these claims are time barred, and are therefore subject to dismissal.

## II.

### (Pay Disparity Claim)

With respect to Plaintiff's claim regarding his failure to receive a performance longevity pay increase from 1984 forward, this claim as stated could fall within the time period encompassed by Plaintiff's administrative charge. Although this particular claim is not mentioned in the administrative charge or in the general and conclusory allegations of Plaintiff's Complaint, it is referenced in his answers to Defendant's supplemental interrogatories as follows:

> One of the acts of discrimination or unlawful acts complained of by this Plaintiff is that he received a performance longevity increase in 1984, and it was the last time he received such a raise. The reason he never again received a performance longevity raise is because of conflict with Gerald Goings. From time to time, the Plaintiff was assigned workers who performed specific jobs, and this led to a clash with Goings who insisted that [Plaintiff] assigned persons who Goings chose to respond to the job needs, mostly white employees. Due to the conflict over this issue, Goings informed [Plaintiff] that [Plaintiff] would never again receive a performance longevity increase, and that in fact became true.

See Plaintiff's Response to Defendant's Supplemental Interrogatories.

Defendant argues that, with respect to this claim, Plaintiff has failed to set forth sufficient evidence to create a genuine issue of fact as to whether he was a victim of race discrimination. The undersigned agrees. Since Plaintiff has no direct evidence of discrimination,[7] he must proceed under the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248

---

[7]Although the undersigned does not find direct evidence of discrimination with respect to this claim, Goings' alleged comment that Plaintiff was "making too much now to be a black man" [referring to Plaintiff's 1990 pay claim] is discussed herein, infra, under a direct evidence standard, and found to be insufficient to warrant relief or to avoid summary judgment in this case.

9



(1981).[8] The United States Supreme Court articulated a three-part analysis for reviewing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff. Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to establish a prima facie case for race discrimination in compensation under Title VII, Plaintiff must show that (1) he is a member of a protected class; (2) he was paid

---

[8]Pursuant to recent court rulings, consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Previously, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); cf. Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc], cert. denied, 528 U.S. 1189 (2000). However, since the Defendant only discusses Plaintiff's claim under the traditional McDonnell Douglas proof scheme, and Plaintiff does not discuss the proof scheme issue at all, the undersigned has only evaluated Plaintiff's claim using a McDonnell Douglas analysis. Cf. Kess v. Municipal Employees Credit Union of Baltimore, Inc., 319 F.Supp.2d 637, 643 & n. 11 (D.Md. 2004).

10



less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job. Brinkley-Obu, 36 F.3d at 343; Kess, 319 F.Supp.2d at 644; Gbenoba v. Montgomery County Dep't of Health & Human Servs., 209 F.Supp.2d 572, 579 (D.Md. 2002). While it is undisputed that Plaintiff is a member of a protected class, Defendant argues that he has failed to identify a single similarly situated white employee who was treated more favorably than he was with respect to longevity pay increases. See Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1105-1106 (4th Cir. 1985) [Title VII plaintiff must identify a similarly situated employee who was treated differently than the plaintiff]; Brinkley-Obu, 36 F.3d at 343 [to establish a prima facie case of race discrimination in compensation under Title VII, a plaintiff must prove that the higher paid employee was preforming a substantially similar job]; Houck v. Virginia Polytechnic Institute and State University, 10 F.3d 204, 206 (4th Cir. 1993) [Plaintiff must show he receives less pay than a co-employee, outside of his protected class, performing work substantially equal in skill, effort, and responsibility under similar working conditions.]; Ogden v. Keystone Residence, 226 F.Supp.2d 588, 602 (M.D.Pa. 2002). A review of Plaintiff's deposition testimony as well as the arguments set forth in his brief confirms that he fails to specifically identify any white employee who was treated more favorably than he was.

Further, even assuming for purposes of argument that other employees during the relevant time period were receiving longevity pay increases and that Plaintiff was not, Plaintiff has failed to present evidence of pretext sufficient to establish that his race was the reason he did not receive longevity pay. Plaintiff testified that in 1990 Goings said he [Plaintiff] "was making too much now to be a black man". However, this statement (assumed to be true for purposes of summary judgment) is not sufficient to avoid summary judgment on this claim. See Taylor v.

11



Northeast Illinois Regional RR Corp., No. 01-6319, 2004 WL 635058, *4 (N.D.Ill. March 30, 2004) ["[E]ven if the court believes that the statement [made by plaintiff's supervisor] is direct evidence that [the supervisor] intended to treat [plaintiff] differently because of his race, the statement itself is not actionable under Title VII.  To prevail on a Title VII claim, it is not enough to show that one's employer harbored racial animus; a plaintiff also must prove that his employer's animus had a material negative effect on the plaintiff's employment"].  Plaintiff has provided no evidence to show that white employees received more favorable treatment. See Taylor, at *5-6 [defendant entitled to summary judgment where plaintiff failed to present any admissible evidence to support claim]; Graham v. Prince George's County, No. 05-1946, 2006 WL 2062879, *3 (4th Cir. July 25, 2006) [summary judgment granted where plaintiff failed to furnish sufficient facts to permit a trier of fact to conclude that she was a victim of wage discrimination].

Additionally, in his own response to the Defendant's supplemental interrogatories, Plaintiff states that he did not receive a longevity raise because of clashes he had with Goings over job assignments, and that as a result of these clashes Goings informed him that he would never again receive a performance longevity increase. The fact that Plaintiff and Goings may have had disagreements over work assignments, resulting in Goings declining to give Plaintiff longevity pay increases, does not mean that Plaintiff suffered an adverse employment action for purposes of a Title VII claim.  *Cf*. Geisler v. Folsom, 735 F.2d 991, 994-996 (6th Cir. 1984) [no adverse employment action where evidence failed to establish any more than bad relations between Plaintiff and her supervisor]; Hawkins v. PepsiCo, Inc., 203 F.3d 274, 282 (4th Cir. 2000) [holding that personality conflicts and unfair treatment "arise routinely in employment relationships" and do not alone constitute discrimination]; Moore, 754 F.2d at 1104 [plaintiff must show adverse action was

12



"motivated by race"]; Chappell v. School Bd. of City of Virginia Beach, 12 F.Supp.2d 509, 517 (E.D.Va. 1998) ["personality conflicts at work are not equivalent to discrimination…."].

In any event, Plaintiff has also presented no evidence to show that Goings denied other African-Americans these longevity pay increases, and that he instead only awarded them to white employees. Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) [dismissing claim where plaintiff "failed to present any evidence suggesting [supervisor's] conduct was motivated by race…."]. This omission is particularly significant in light of the fact that Goings promoted Plaintiff during this same time period. Plaintiff's Deposition, pp. 10-12. *Cf.* Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir. 1996) [rejecting Title VII claim where the supervisor alleged to have engaged in discriminatory conduct was the same individual who had hired plaintiff in the first place]; Venugopal v. Shire Laboratories, 334 F.Supp.2d 835, 844 (D.Md. 2004) [finding that where the person alleged to have discriminated was the same person who hired the plaintiff created a "'powerful inference' that the failure to promote was not motivated by discriminatory animus"], aff'd 134 Fed.App. 677 (4th Cir. 2005). The undersigned can discern no evidence of pretext in these facts, and this claim should therefore be dismissed.

**Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for

13



summary judgment be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

August 9, 2006

14

